**Michael and Ruth Quaranta v. Rodney and Gail Trevett**

[350 A.2d 347]

No. 6-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed December 2, 1975

*John A. Burgess Associates, Ltd.,* Montpelier, for Plaintiff.

*George E. Rice, Jr.,* Montpelier, for Defendant.

**Smith, J.** This case involves the sale of a retail florist business located in Montpelier, Vermont, by defendants to plaintiffs. They brought suit against defendants claiming a breach of contract, alleging fraud in the inducement of the contract, and seeking both injunctive relief and also actual and punitive damages. Defendants, in turn, answered the complaint, denying the allegations therein, and also filed a counterclaim alleging that certain monies were due them from the plaintiffs. The matter was heard in the Washington Superior Court on September 24, 1974, and November 8, 1974. The lower court made findings of fact and entered judgment that the plaintiffs should take nothing, and that the defendants were entitled to a judgment in the sum of $362.85 against the plaintiffs by virtue of their counterclaim.

Defendants were operators of a business known as "Emslie the Florist" which consisted of the retail flower shop, previously mentioned, as well as a greenhouse located in Berlin, Vermont. On August 1, 1973, the parties entered into a written agreement by which defendants sold to plaintiffs the retail flower shop, as well as the right to operate under the name of "Emslie the Florist." Defendants retained the greenhouse in Berlin, as well as the right to retail plants from that location. Purchase price paid by the plaintiffs to the defendants was $35,000.00, financed in part by a loan from the Small Business Administration, and partially by a promissory note to the defendants. Although the agreement was not to become final until August 17, 1973, the plaintiffs commenced the operation of the florist shop on August 1, 1973, and for some period of time were assisted by the defendants in operating the business.

The first argument briefed by plaintiffs here is that because oral agreements were entered into by the parties, as well as a written contract, such oral agreements should have been considered by the lower court in addition to the written agreement. The record makes abundantly clear that the lower court admitted evidence relative to those oral agreements, and that it considered both in its findings of fact and judgment. We fail to find any issue presented for our consideration.

The lower court found that the trade name "Emslie the Florist" was conveyed by defendants, pursuant to the sale agreement, and that the business was conducted by plaintiffs under that trade name. It was further found that the parties

filed all necessary papers with the Secretary of State to transfer the trade name from defendants to plaintiffs. The lower court determined, contrary to the allegation in plaintiffs' complaint, that defendants at no time after making the agreement held themselves out to the public as doing business as "Emslie the Florist."

Plaintiffs brief their contentions to this latter finding, and claim a breach of contract because of an advertisement published in a local newspaper and broadcast over a radio station by defendants. The advertisement, an exhibit in the case, was for the sale of plants by defendants. The right to sell plants had been retained by defendants under the agreement. The advertising ended with the first names of the defendants and their employees, with the additional wording "formerly Emslie the Florist." The advertisement carefully disassociated the defendants from their former florist business, and advertised only plants, not flowers. Upon these facts it would be an absurdity for us to reverse the trial court on its finding that the defendants did not continue to do business as "Emslie the Florist." The overwhelming evidence supports the finding below. V.R.C.P. 52(a).

Plaintiffs next set out what they contend was a breach on the part of defendants for failure to carry out their agreement to transfer their membership in the Florist Trans World Delivery Association (hereinafter F.T.D.), an organization that transfers orders for flowers from the shop where ordered to the shop nearest the prospective recipient. This claimed breach is based on the fact that an interval of some five months took place between the time the agreement was signed and the receipt by the plaintiffs of their F.T.D. membership. No evidence was produced that the defendants in any way slowed the certification process. In fact the lower court found, and the evidence supports the finding, that defendants maintained an escrow balance of $350.00 of their own money with F.T.D. in order to aid the plaintiffs in obtaining certification.

The answer book of F.T.D. in reference to the question of transferring ownership of certification guaranteed only that the transfer could be within six months. Plaintiffs were so informed when they telephoned the offices of the Association.

The fact that such certificate was received by plaintiffs in less than six months was evidence that the delay was not unreasonable.

 Plaintiffs finally brief a claim of breach of contract on the ground that defendants had not paid all of the debts of "Emslie the Florist" incurred prior to the sale. The evidence supports the finding of the lower court that plaintiffs had not been obliged to pay any of such debts, that defendants had acknowledged their obligation to pay them, and that no damage resulted to plaintiffs as a result of obligations incurred by defendants before the sale. V.R.C.P. 52 (a).

The last question raised by plaintiffs concerns the admission of oral testimony by defendants relative to the F.T.D. rules. Such rules were introduced into evidence, were admitted and were before the lower court. The question sought to be raised is moot.

This appeal is based upon petty and inconsequential grounds and is deemed by this Court frivolous.

*Judgment affirmed.*